**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRYAN VELAZQUEZ, on behalf of himself and all others similarly situated, ) ) ) | Case No.: 1:22-cv-09247-ER |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| DON ROBERTO JEWELERS, INC., ) | |
| Defendant(s) ) ) | |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**</u>
<u>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>
<u>**UNDER FED. R. CIV. P. 12(b)(2) AND 12(b)(3)**</u>

**STEIN SAKS, PLLC**

<u>*/s/ Kenneth Willard*</u>
Kenneth Willard, Esq.
One University Plaza, Suite 620
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501
kwillard@SteinSaksLegal.com

# **TABLE OF CONTENTS**

Table of Authorities ……………………………………………………....... iii

I.   Introduction …………………………………………………….…………. 1

II.  Factual Background …………………………………………………....... 2

III. Standard of Review ………………………………………………….. 3

IV.  Legal Argument ………………………………………………………… 4

    A.   THIS COURT HAS PERSONAL JURISDICTION UNDER
       NEW YORK'S LONG-ARM STATUTE UNDER § 302(a)(1) ….. 4

       i.   Plaintiff's Failed Attempts to Make Purchases on the Website
          Establish "Purposeful Activity" Under § 302(a)(1)………… 6

       ii.  The Business Activity Conducted by Defendant in New York
          State Is Substantially Related to Plaintiff's ADA and
          NYCHRL Claims ………………………………………….... 12

          a.   Plaintiff's Failed Attempts to Make Purchases on the
             Website Demonstrate Discrimination under the ADA
             and NYCHRL, Showing an Articulable Nexus to
             Those Claims ………………………………………… 13

    B.   FINDING PERSONAL JURISDICTION OVER DEFENDANT
       COMPORTS WITH DUE PROCESS ………………………….. 16

    C.   VENUE IS APPROPRIATE IN THE CURRENT FORUM ….…… 20

V.   CONCLUSION ……………………………………………………. 22

**Table of Authorities**

**Supreme Court Opinions**

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ..................................................... 17

**Second Circuit Opinions**

*Averbach v. Cairo Amman Bank, No. 19-cv-0004-GHW-KHP*,
 2020 U.S. Dist. LEXIS 10902 (S.D.N.Y. Jan. 21, 2020) ..................................................... 18

*Aviles v. S&P Glob., Inc.*,
 380 F. Supp. 3d 221 (S.D.N.Y. 2019) ............................................................................. 17

*Best Van Lines, Inc. v. Walker*,
 490 F.3d 239 (2d Cir. 2007) ...................................................................................... 5, 16

*Brady v. Anker Innovations Ltd., No. 18-cv-11396*
 (NSR), 2020 U.S. Dist. LEXIS 5672 (S.D.N.Y. Jan. 13, 2020) .................................... 8, 11

*Brown v. Web.com Grp., Inc.*,
 57 F. Supp. 3d 345 (S.D.N.Y. 2014) ............................................................................... 6

*Buck Constr., LLC v. Murray Corp., No. 6:17-CV-275*
 (FJS/TWD), 2017 U.S. Dist. LEXIS 145858 (N.D.N.Y. Sep. 8, 2017) .................... 17-18, 18

*Camacho v. Vanderbilt Univ.*,
 2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019) ................................ 6, 7, 11-12, 14, 16, 17

*Chloe v. Queen Bee of Beverly Hills, LLC*,
 616 F.3d 158 (2d Cir. 2010) .......................................................................................... 5

*Citigroup, Inc. v. City Holding Co.*,
 97 F. Supp. 2d 549 (S.D.N. Y. 2000) ..................................................................... 9, 18, 19

*Cosgrove v. Oregon Chai, Inc.*,
 520 F. Supp. 3d 562 (S.D.N.Y. 2021) ............................................................................. 9

*EnviroCare Techs., LLC v. Simanovsky, No. 11-CV-3458*
 (JS)(ETB), 2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) .................................. 8

*HSH Nordbank AG N.Y. Branch v. Street*,
 2012 U.S. Dist. LEXIS 99830 (S.D.N.Y. July 18, 2012) .................................................. 17

*Ingenito v. Riri USA, Inc.*,
 89 F. Supp. 3d 462 (E.D.N.Y. 2015) ......................................................................... 12, 13

*Licci v. Lebanese Canadian Bank*,
 732 F.3d 161 (2d Cir. 2013) ................................................................................ 4-5, 16, 18

*Magnoni v. Smith & Laquercia, LLP*,
 701 F. Supp. 2d 497 (S.D.N.Y. 2010) ............................................................................. 9

*Megna v. Biocomp Lab'ys Inc.*,
    220 F. Supp. 3d 496 (S.D.N.Y. 2016). ............................................................ 20

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ............................................................................... 17

*Romero v. 88 Acres Foods, Inc.*,
    580 F. Supp. 3d 9 (S.D.N.Y. 2022) ......................................................... 5-6, 7, 11, 15

*Rosa v. 600 Broadway Partners, LLC*,
    175 F. Supp. 3d 191 (S.D.N.Y. 2016) ............................................................... 13

*Rubin v. City of N.Y.*,
    2007 U.S. Dist. LEXIS 23003 (S.D.N.Y. Mar. 29, 2007) ........................... 14-15

*Spin Master, Ltd. v. 158*,
    463 F. Supp. 3d 348 (S.D.N.Y. 2020) ............................................................ 7, 8

*State." Eades v. Kennedy, PC Law Offices*,
    799 F.3d 161 (2d Cir. 2015) ............................................................................. 5

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    2003 U.S. Dist. LEXIS 7869 (S.D.N.Y. May 9, 2003) ................................. 3, 4

*Thomas Publ'g Co. v. Indus. Quick Search*,
    237 F. Supp. 2d 489 (S.D.N.Y. 2002) ................................................... 14, 15, 19

*Weekes v. Outdoor Gear Exch., Inc.*,
    2023 U.S. Dist. LEXIS 36905 (S.D.N.Y. Mar. 6, 2023) ......................... 9, 20, 21

*WowWee Grp. Ltd v. Meirly*,
    No. 18-CV-706 (AJN), 2019 U.S. Dist. LEXIS 51905 (S.D.N.Y. Mar. 27, 2019) .................... 8, 9, 10

## State Cases

*Rushaid v. Pictet & Cie*,
    2016 NY Slip Op 07834, 28 N.Y.3d 316, 45 N.Y.S.3d 276, 68 N.E.3d 1 ......................................... 12

*Rushaid*,
    28 N.Y.3d ................................................................................................. 12, 13

## State Statutes

N.Y. C.P.L.R. § 302 ................................................................. 4, 6, 7, 9, 10, 11, 12, 15, 18, 19

## Rules

FED. R. CIV. P. 12 ................................................................................................. 1, 3

## I.    __INTRODUCTION__

Defendant Don Roberto Jewelers, Inc. ("Don Roberto") moves to dismiss this Complaint under Rule 12(b)(2) of the Fed.R.Civ.P. for lack of personal jurisdiction and 12(b)(3) for improper venue.    Defendant argues that this case should be dismissed for lack of personal jurisdiction primarily on the basis that the website at issue in this case, www.donrobertojewelers.com (the "Website"), is available to everyone on the internet who can access it and Defendant does not make any particular marketing efforts toward New York.    Defendant further argues that it should be able to escape the jurisdiction of this Court because no transaction was ever consummated in New York by Plaintiff, which, according to Defendant, is required under New York's long-arm statute.    Defendant stresses that personal jurisdiction should not be driven by the fortuitous conduct of a plaintiff, but by a defendant's activities directed toward the forum state.    Finally, in its jurisdictional analysis, Defendant argues that it would be unfair to hale it into court in New York given the small amount of business it conducts in New York.

Numerous courts in this jurisdiction and the Southern District of New York have rejected this reasoning, however.    These courts note that New York's long-arm statute is a single transaction statute, and establishing even a single transaction is sufficient to establish personal jurisdiction over a defendant.    Defendant has admitted that it had several transactions over the last several years in New York.    Moreover, courts recognize that a transaction need not be consummated where websites lie on the extreme end of commercial activity and other indicia of commercial activity in the forum state lie, such as here, transactions.    Defendant completely ignores this aspect of the jurisdictional analysis, and since its Website is in fact on the far end of the spectrum, Plaintiff's failed attempt to purchase a product on the Website, due to the access barriers found on the Website, is enough to establish personal jurisdiction over Defendant when coupled with evidence

of other transactions in New York.  Finally, Plaintiff is able to establish an articulable nexus between the failed transaction at issue and Plaintiff's discrimination claim because Plaintiff's failed attempt to purchase a product on Defendant's Website, due to the access barriers found on the Website, lies at the heart of Plaintiff's discrimination claim.  In all respects, Plaintiff has satisfied the requirements of New York's long-arm statute.

Defendant's due process analysis fairs no better.  Having thrust itself in the world of internet commerce and conducted transactions in New York, therefore benefiting from the privileges of New York law, it is not unreasonable to expect to be haled into New York to answer for its misconduct related to similar transactional attempts.  Based on the declaration submitted in this case, Defendant is clearly aware of its transactions in New York, and New York has an interest in enforcing its discrimination laws and protecting its citizens.  Finally, many of the burdens that Defendant complains of are alleviated by technological advances, which make litigation across state borders far easier than once contemplated.

Defendant's remaining arguments regarding venue are, as will be demonstrated below, without merit.  Unlike what Defendant proposes, it is Defendant's burden to establish that a change of venue is warranted, and Defendant has not met that burden here.  Defendant has proposed no witness who would be inconvenienced by the present forum, nor described what their testimony would be.  Defendant is more than financially capable of litigating in New York, and many of the other factors in considering a change of venue weigh in favor of maintaining the current forum.

## II.    <u>FACTUAL BACKGROUND</u>

Plaintiff is a visually impaired and legally blind person who requires screen-readings software to navigate the internet.  Dkt. # 15, ¶¶ 2, 23.  Defendant owns and operates the Website, which offers products for sale and ensures delivery throughout the United States, including New

York.  *See Id.* at ╟ 21.  Plaintiff visited the Website September 13, 2022, and again on September 16, 2022, intending to purchase a ring, but encountered several access barriers that prevented him from completing the purchase.  *Id.* at ╟ 27.  Those access barriers included an inability to distinguish between rings, forcing Plaintiff to scroll through literally hundreds of rings, see *Id.* at ╟ 28; duplicative or similar-sounding alternative text for rings which made it impossible to differentiate between rings, *Id.* at ╟ 29; and a contact number that was presented in plain text and was therefore inaccessible with screen-reading software, *Id.* at ╟ 30.

Overall, Plaintiff encountered numerous problems with the Website, including duplicative or identical alt. text, lack of alt. text embedded within images to describe the image, lack of proper heading structure on the homepage, poorly structured submenus, inaccessible interactive elements such as the previous/next carousel buttons and navigation dots, and the inability to use the contact page using the prescribed email.  *See* Dkt. # 15, ╟ 31.  These, among other access barriers, prevented Plaintiff from enjoying the Website as sighted users do and complete a purchase. *Id.* at ╟╟ 27, 31, 32, 33, 35.   It is Defendant's policy to deprive visually impaired and legally blind persons such as Plaintiff full access to the Website through its refusal to remediate the Website's access barriers.  *Id.* at ╟ 34.

### III.    STANDARD OF REVIEW

"A motion to dismiss under Rule 12 must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, 2003 U.S. Dist. LEXIS 7869, at *22-*23 (S.D.N.Y. May 9, 2003)(quoting *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 334 (S.D.N.Y. 2000)(internal citation omitted))(internal quotations omitted).  "Where, as here, jurisdiction is challenged prior to discovery, plaintiffs may defeat a motion to dismiss by pleading in good faith … legally sufficient

allegations of jurisdiction." *Teachers' Ret. Sys.*, 2003 U.S. Dist. LEXIS 7869, at *23 (quoting *Ball v. Metallurgie Hoboken-Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990)(internal citation omitted))(internal quotations omitted).  Until an evidentiary hearing is held, a plaintiff need only make a *prima facie* showing that jurisdiction exists through pleadings and affidavits.  2003 U.S. Dist. LEXIS 7869, at *23 (citing *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).  The reviewing court must construe these pleadings and affidavits in a light most favorable to the plaintiff, and where any doubt exists, resolve it in the plaintiff's favor.  *Id.* at *23 (citing *CutCo Industries, Inc.*, 806 F.2d at 365 (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985))).  Additionally, a court reviewing a jurisdictional motion such as this may consider evidence outside the pleadings without converting it to a motion for summary judgment under Rule 56.  *Id.* at *23-*23 (citing *Am. Prop. Consultants v. Walden Lisle Assocs. Ltd. Pshp.*, 95 Civ. 329 (KMW), 1997 U.S. Dist. LEXIS 9984, at *12 (S.D.N.Y. July 10, 1997)).  As with a motion to dismiss, however, legal assertions couched as factual allegations are not entitled to the presumption of truth.  *Id.* at *24 (citing *Cornell v. Assicurazioni Generali S.p.A.*, 97 Civ. 2262 (MBM), 2000 U.S. Dist. LEXIS 11004, at *5 (S.D.N.Y. Aug. 2, 2000)).

## IV.    LEGAL ARGUMENT

### A.    THIS COURT HAS PERSONAL JURISDICTION UNDER NEW YORK'S LONG-ARM STATUTE UNDER § 302(a)(1)

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary … who … transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013)(quoting *Sole Resort, S.A. de C.V.*

*v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).  This is a "single act statute," *i.e.* "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 522 N.E.2d 40, 43, 527 N.Y.S.2d 195 (N.Y. 1988)).  "Purposeful activities" are defined as "those with which a defendant, through volitional acts, avails itself of the privileges of conducting activities within the forum State." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015)(quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 880 N.E.2d 22, 26, 849 N.Y.S.2d 501 (N.Y. 2007)); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246-247 (2d Cir. 2007)("With respect to the first part of the test for jurisdiction under section 302(a)(1), New York courts define 'transact[ing] business' as purposeful activity – "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'")(quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37-38 (1967)(quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958))).

"When considering whether to exercise personal jurisdiction over a defendant because of his or her activities via a website, the Second Circuit directs district courts to look to the degree of interactivity and commercial nature of the site." *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 15 (S.D.N.Y. 2022)(citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246-47 (2d Cir. 2007)("We think that a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York.").  "It is, of course, not sufficient that the defendant conducts business

through an interactive third-party website; the question is whether the defendant used the website to reach into the forum in some meaningful way." *Spin Master, Ltd. v. 158*, 463 F. Supp. 3d 348, 363 (S.D.N.Y. 2020).

"[C]ourts in the Southern District 'have identified a spectrum of potential website contacts with a forum state, ranging from "passive" websites, which merely display information and therefore are unlikely to support jurisdiction, to websites which clearly allow defendant to transact business in the forum state over the internet, and thus sustain jurisdiction.'" *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 357 (S.D.N.Y. 2014)(citing *Knight-McConnell v. Cummins*, 2005 U.S. Dist. LEXIS 11577, at *8 (S.D.N.Y. June 10, 2005) "Fully interactive websites, over which a seller knowingly transmits goods or services to users, are sufficient to confer personal jurisdiction pursuant to New York's long-arm statute." *Romero*, 580 F. Supp. 3d at 15 (citing *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418-19 (S.D.N.Y. 2009)). "Furthermore, the case law has stopped short of requiring additional conduct beyond maintaining an interactive website that offers products to consumers." *WowWee Grp. Ltd v. Meirly*, No. 18-CV-706 (AJN), 2019 U.S. Dist. LEXIS 51905, at *10 (S.D.N.Y. Mar. 27, 2019)(citing *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565-66 (S.D.N. Y. 2000)).

### i.    Plaintiff's Failed Attempts to Make Purchases on the Website Establish "Purposeful Activity" Under § 302(a)(1)

Plaintiff's failed attempts to make purchases on the Website constitutes "purposeful activity" where the Website lies on the extreme end of commercial activity since purchases can be made directly on the Website from New York.

A court in this District has found purposeful activity in New York involving an ADA claim, like this one. In *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019), the plaintiff interacted with a financial aid calculator that was on the defendant university's

website, allowing prospective students to estimate the amount of financial aid they would be eligible to receive if they attended the school. *See Camacho*, 2019 U.S. Dist. LEXIS 209202 at *16 ("Plaintiff does, however, make specific allegations that he attempted to access — and was denied access to — other portions of the Website, including the page which hosted the net price calculator."). The plaintiff never alleged that student loans were actually paid online in New York, but the court found the attempted access of the financial aid calculator sufficient on its own to constitute purposeful business activity in New York considering the additional allegation, construed most favorably to the plaintiff, that the university had purposefully availed itself of the privileges of doing business in New York by conducting recruiting events in New York where potential students had been directed to the website as a recruitment tool. 2019 U.S. Dist. LEXIS 209202 at *17-*19.

Additionally, in *Romero*, the court went a step further and found that the "transacting business" prong of § 302(a)(1) had been satisfied based exclusively on the fact that "Defendant transacts business in New York through its Website and ensures the delivery in New York of the goods sold." *Romero*, 580 F. Supp. 3d at 15. The court reasoned, "The 88 Acres Website is thus fully interactive and is used to effect commercial transactions with customers in New York." 580 F. Supp. 3d at 15-16. The court concluded, "This purposeful availment of the New York market is sufficient to meet the 'transacting business' prong for personal jurisdiction pursuant to New York's long-arm statute." *Id.* at 15-16.

*Romero* relied on *Spin Master, Ltd. v. 158*, 463 F. Supp. 3d 348 (S.D.N.Y. 2020), which explained in depth why a fully interactive website that guarantees delivery and shipment of a defendant's products to the forum state establishes purposeful activity. *See Spin Master*, 463 F. Supp. 3d 363-64. The court compared the passive role of a defendant who owns an auction website

7

such as eBay, where the defendant takes no role in making its products available for purchase in the forum state, and all of the postings are the responsibility of the third-party seller, versus that of a merchant website where the defendant is directly responsible for the marketing efforts of its website.  463 F. Supp. 3d 363 ("in [the] case [of an auction website], a third party, 'and not the user, controls the interactivity and marketing efforts of the website,' and the interaction with New York by the defendant cannot be said to be purposeful.").

The *Spin Master* court eventually found that the plaintiffs had established purposeful activity because they had purchased products directly from the defendants, who had then ensured delivery to the forum state.  *Spin Master*, 463 F. Supp. 3d 363-64 ("[T]he exhibits submitted by Plaintiffs demonstrate that these six Defaulting Defendants did not sell their products to the highest bidder such that the forum of New York was happenstance, but rather offered for sale and did sell and ship to New York."); *see also WowWee Grp. Ltd v. Meirly*, No. 18-CV-706 (AJN), 2019 U.S. Dist. LEXIS 51905, at *8-10 (sales of counterfeit product to New York through Amazon sufficient to establish purposeful availment); *see also Brady v. Anker Innovations Ltd.*, No. 18-cv-11396(NSR), 2020 U.S. Dist. LEXIS 5672, at *12-13 (S.D.N.Y. Jan. 13, 2020)(sales to New York sufficient to establish purposeful activity even though the defendant did not have as much control over the interactivity of the Amazon storefront as it would have had on its own managed website, and sales only accounted for 10% of total annual volume); *see also EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088, at *12-13 (E.D.N.Y. June 4, 2012)(single sale of a counterfeit item over eBay sufficient to establish purposeful activity considering the seller has expanded its market "literally to the world," which requires a merchant to accept "the concomitant legal responsibilities that such an expanded market may bring with it").

Furthermore, as noted above, "the case law has stopped short of requiring additional conduct beyond maintaining an interactive website that offers products to consumers." *WowWee*, No. 18-CV-706 (AJN), 2019 U.S. Dist. LEXIS 51905 at *10.    Thus, in *Citigroup*, the court "'conclude[d]' that the business's activity over the Internet, which consisted of posting information about products, taking applications, and providing email and live chat responses to customers, 'conferred] personal jurisdiction under CPLR § 302(a)(1).'"    *WowWee*, No. 18-CV-706 (AJN), 2019 U.S. Dist. LEXIS 51905 at *10 (interpreting *Citigroup*, 97 F. Supp. 2d at 565-66).  The court found that the defendant had purposefully availed itself of the privilege of doing business in New York exclusively through these interactive website features, even though, considered as a whole, the website was only in the middle spectrum of commercial activity.  *See Citigroup*, 97 F. Supp. 2d at 565-66

Here, the Website contains many of the same interactive features that were outlined in *Citigroup*.   While the Website does offer information about the Don Roberto Catalog, *see* https://donrobertojewelers.com/current-catalog, last visited April 21, 2023[1], and therefore exhibits features of a more informational, passive website that would not on its own satisfy the "purposeful availment" prong, the Website goes beyond that.   Specifically, the Website directly markets its

---

[1] Courts may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). "A court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 582 n.5 (S.D.N.Y. 2021)(cleaned up); *see also Weekes v. Outdoor Gear Exch., Inc.*, 2023 U.S. Dist. LEXIS 36905, at *2 (S.D.N.Y. Mar. 6, 2023)("The Court takes judicial notice of the Website, as it is incorporated by reference into the FAC."); *see also Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 501 (S.D.N.Y. 2010)("It is generally proper to take judicial notice of articles and [websites] published on the [i]nternet."). Plaintiff requests this Court take judicial notice of the Website, as evidenced here and throughout the instant motion papers.

products and offers them for sale to New York through its "Shop" menu. *See* https://donrobertojewelers.com/, last visited April 21, 2023; *see also* *e.g.* https://donrobertojewelers.com/mens-jewelry, last visited April 21, 2023. The Website also offers the ability to create a unique account (*see* "Customer Login," https://donrobertojewelers.com/customer/account/login/referer/aHR0cHM6Ly9kb25yb2JlcnRva mV3ZWxlcnMuY29tL2N1c3RvbWVyL2FjY291bnQvaW5kZXgv/, last visited April 21, 2023), apply for credit (*see* "Credit Application, https://donrobertojewelers.com/blog/credit-application, last visited April 21, 2023), contact Defendant through an online submission form (*see* "Contact Us," https://donrobertojewelers.com/contact/, last visited April 21, 2023), and offers guidance on ring sizes (*see* "Ring Sizing Guide," https://donrobertojewelers.com/media/pdf/ring_sizer.pdf, last visited April 21, 2023). These features are substantially identical to the website in *Citigroup*, which consisted of "posting information about products, taking applications, and providing email and live chat responses to customers, 'conferred] personal jurisdiction under CPLR § 302(a)(1).'" *WowWee*, No. 18-CV-706 (AJN), 2019 U.S. Dist. LEXIS 51905 at *10 (interpreting *Citigroup*, 97 F. Supp. 2d at 565-66). It is clear, therefore, that Defendant is managing its own website and the Website is more than just a passively informational website, but aggressively markets its products to consumers in a way that establishes purposeful availment.

As the *WowWee* court noted, "the case law has stopped short of requiring additional conduct beyond maintaining an interactive website that offers products to consumers." *WowWee*, No. 18-CV-706 (AJN), 2019 U.S. Dist. LEXIS 51905 at *10. Thus, the fact that these products are offered for sale on an interactive website that lies at the extreme end of commercial activity and is obviously geared to such activity, is sufficient on its own to establish that Defendant has

purposefully availed itself of the privilege of conducting business in New York. Plaintiff does not need to establish that an actual sale occurred.

Nevertheless, Defendant's own submissions indicate that it has actually sold products in New York. *See* Declaration of Gina Papandrea, Dkt. # 17-1, ⁋ 6 (establishing that Defendant has made three separate sales to New York addresses in the last two years). Along with the extreme end of commercial activity on the Website, these sales independently establish purposeful activity because, "as previously explained, a single act is sufficient to support jurisdiction under N.Y. C.P.L.R. § 302(a)." *Brady*, No. 18-cv-11396(NSR), 2020 U.S. Dist. LEXIS 5672 at *13; *see also Romero*, 580 F. Supp. 3d at 15-16 (""This purposeful availment of the New York market is sufficient to meet the 'transacting business' prong for personal jurisdiction pursuant to New York's long-arm statute.").

For substantially the same reasons, it does not matter that, as Defendant points out, its sales to New York in 2021 only "account[ed] for 0.0004% of its total sales and 0.04% of its online sales," and that its 2022 New York sales only "account[ed] for 0.0004% of its total sales and 0.01% of its total online sales." *See* Papandrea Decl., Dkt. # 17-1, ⁋ 6. As the *Brady* court reminds us, "it does not matter that Fantasia's sales to New York only account for 10% of its total, worldwide sales because, as previously explained, a single act is sufficient to support jurisdiction under N.Y. C.P.L.R. § 302(a)." No. 18-cv-11396(NSR), 2020 U.S. Dist. LEXIS 5672 at *13.

Moreover, as *Camacho* concluded, Plaintiff's attempt to purchase a product on the Website, but foiled because of the access barriers, is another reason to find purposeful availment considering these additional sales in New York. *See Camacho*, 2019 U.S. Dist. LEXIS 209202 at *17-19 (finding the plaintiff's foiled attempts to use the student loan calculate sufficient to

establish purposeful availment considering the additional allegations that the defendant conducted recruitment activities in New York).

Therefore, given the extreme end of commercial activities on the Website, and the many interactive features that it offers; given the fact that Defendant manages the Website directly and it is not an auction site, where third-party sellers direct the marketing efforts of the website; given the fact that products are offered for sale to New York customers and that Defendant has made sales to New York; and finally, given that Plaintiff was foiled in his attempts to purchase products on the Website, which constitutes commercial activity, there is purposeful availment.

### ii. The Business Activity Conducted by Defendant in New York State Is Substantially Related to Plaintiff's ADA and NYCHRL Claims

The business activity is substantially related to the claims of this case on the one hand because Plaintiff's failed attempts to make purchases on the Website are the *sine qua non* of any discrimination claim under ADA and NYCHRL based on a noncompliant website.  Without the failure, there would be no discrimination.   Additionally, Plaintiff attempted to use the same interactive portions of the Website to purchase products as nondisabled persons do who successfully made purchases in New York.  For these reasons, Plaintiff's claims are substantially related to the business activity occurring in New York.

"To satisfy the second prong of CPLR 302 (a) (1) that the cause of action arise from the contacts with New York, there must be an '"articulable nexus" … or "substantial relationship" … between the business transaction and the claim asserted'"  *Rushaid v. Pictet & Cie*, 2016 NY Slip Op 07834, 28 N.Y.3d 316, 329, 45 N.Y.S.3d 276, 68 N.E.3d 1 (quoting *Licci*, 20 NY3d at 339); *see also Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 477 (E.D.N.Y. 2015)(citing *Best Van Lines*, 490 F.3d at 246; *Licci III*, 20 N.Y.3d at 339).  "This inquiry is 'relatively permissive.'"  *Rushaid*, 28 N.Y.3d at 329 (internal citations and quotations omitted).  This does not require a causal link,

"but merely 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" 28 N.Y.3d at 329 (citing *Licci*, 20 NY3d at 339). "'[W]here at least one element [of the cause of action] arises from the New York contacts, the relationship between the business transaction and the claim asserted' supports a finding of jurisdiction under the statute." *Ingenito*, 89 F. Supp. 3d at 477 (quoting *Licci III*, 20 N.Y.3d at 341). "The claim need only be 'in some way arguably connected to the transaction.'" *Rushaid*, 28 N.Y.3d at 329 (quoting *Licci*, 20 NY3d at 340).

### a. Plaintiff's Failed Attempts to Make Purchases on the Website Demonstrate Discrimination under the ADA and NYCHRL, Showing an Articulable Nexus to Those Claims

Here, considering that the Website lies on the extreme end of commercial activity, Plaintiff's failed attempts are nevertheless substantially related to Plaintiff's ADA and NYCHRL claims – because they clearly establish discrimination.

It is already well established that "'where at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted' supports a finding of jurisdiction under the statute." *Ingenito*, 89 F. Supp. 3d at 477 (quoting *Licci III*, 20 N.Y.3d at 341). The primary element of any ADA and NYCHRL claim is unequal access. *See Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 198-99 (S.D.N.Y. 2016)(citing to *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008))("To state a claim under Title III, [Plaintiff] must allege (1) that [he] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) *that defendants discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendants provide.*")(emphasis added). This necessarily entails a comparison of the disabled person's experience with that of a nondisabled person in being denied "a full and equal opportunity to enjoy the services defendants provide." Thus, the underlying predicate of "a full

and equal opportunity to enjoy the services defendants provide" can only be proven by showing that nondisabled persons were actually able to consummate transactions on the Website by virtue of their not being disabled, whereas Plaintiff was not able to because of his disability. The inescapable conclusion is that the commercial activity with nondisabled persons in New York is substantially related to Plaintiff's discrimination claims.

The *Camacho* court's analysis is instructive. The court noted that it could not consider the online payment of student loans in New York as commercial activity because the plaintiff had not alleged it. 2019 U.S. Dist. LEXIS 209202 at *14. Additionally, "Plaintiff has not claimed that he tried to access the pages of Defendant's website that would allow him to pay tuition. Consequently, Plaintiff has not alleged that he was denied access to the portions of the Website through which commercial activity is transacted." *Id.* at *15. The court therefore necessarily implied that had the plaintiff made those allegations the plaintiff would have been successful in establishing an articulable nexus between the commercial activity conducted with nondisabled persons and the plaintiff's denial of same due to his disability. But that is exactly what Plaintiff has done here.

Courts have found business activity substantially related to a plaintiff's claim where the use of the website alone constitutes the basis for the claim. *See Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002)("the cause of action for infringement arises directly out of the transaction of business, to wit, the use of an allegedly infringing website."); *see also Rubin v. City of N.Y.*, 2007 U.S. Dist. LEXIS 23003, at *10 (S.D.N.Y. Mar. 29, 2007)("In the case at bar, there is an 'articulable nexus' between Rubin's request for declaratory relief, the City's counterclaim for trademark infringement, and Rubin's online internet business because Rubin

14

transacted business with New York residents over an 'active' website where customers from New York purchased allegedly infringing merchandise.").

As the court in *Romero* explained,

> Plaintiff visited Defendant's Website, but was denied access to portions of the Website through which commercial activity took place because of the alleged access barriers. (Compl. ¶¶ 24-25.) This allegedly discriminatory conduct, transacting with sighted individuals but not with visually impaired individuals, is what forms the basis of Plaintiff's claims against Defendant. Defendant's transactions thus have a substantial relationship with the claim asserted—that Defendant's website is accessible to sighted customers but inaccessible to visually impaired customers. (Compl. ¶¶ 19, 27, 33.) Therefore, the court may exercise personal jurisdiction pursuant to section 302(a)(1) of the New York long-arm statute.

*Romero*, 580 F. Supp. 3d at 16.

Based on the above caselaw, Plaintiff has established an "articulable nexus" between his asserted discrimination claims and the failed attempts to purchase products on the Website. It was because of the access barriers on the Website that Plaintiff was unable to consummate the transaction, and therefore Plaintiff's claims arise out of this failed transaction. *See Romero*, 580 F. Supp. 3d at 16; *see also Thomas*, 237 F. Supp. 2d at 492. ("the cause of action for infringement arises directly out of the transaction of business, to wit, the use of an allegedly infringing website."). Again, Defendant's own submissions provide the basis of comparison, and therefore establish the element of discrimination that is necessary to establish an "articulable nexus" between the transaction at issue and Plaintiff's claim. *See* Dkt. # 17-1, ¶ 6 (establishing that Defendant has made three separate sales to New York addresses in the last two years). Based on the alleged access barriers on the Website, those transactions would not have occurred if the consumers had been visually impaired. Therefore, Plaintiff has established the core component of any discrimination claim, differential treatment based on the protected class of citizens under the ADA,

and thus the substantial relationship between the transaction and Plaintiff's claims.  This satisfies

the second prong of New York's long-arm statute.

### B.  FINDING PERSONAL JURISDICTION OVER DEFENDANT COMPORTS WITH DUE PROCESS

Exercising personal jurisdiction over Defendant comports with the Due Process Clause of

the U.S. Constitution.

After finding personal jurisdiction appropriate, a court must then determine whether

exercising personal jurisdiction comports with due process under the U.S. Constitution.  *Licci*, 732

F.3d at 168 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95

(1945))); *Camacho*, 2019 U.S. Dist. LEXIS 209202 at *8 (citing *Licci*, 732 F.3d at 168).  "Due

process considerations require that the defendant have certain minimum contacts with the forum

state such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice."  *Licci*, 732 F.3d at 169 (internal citations omitted).

The Due Process analysis is a two-step process.  *Licci*, 732 F.3d at 170.  First, the court

"evaluate[s] the quality and nature of the defendant's contacts with the forum state under a totality

of the circumstances test."  *Best Van Lines*, 490 F.3d at 242 (citations and internal quotation marks

omitted).  "Where the claim arises out of, or relates to, the defendant's contacts with the forum –

i.e., specific jurisdiction [is asserted] – minimum contacts [necessary to support such jurisdiction]

exist where the defendant purposefully availed itself of the privilege of doing business in the forum

and could foresee being haled into court there."  *Licci*, 732 F.3d at 170(quoting *Bank Brussels

Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)(internal quotation

marks omitted).

"Once it has been decided that a defendant purposefully established minimum contacts

within the forum State, these contacts may be considered in light of other factors to determine

whether the assertion of personal jurisdiction would comport with fair play and substantial justice."
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).
Relevant factors include "[i] the burden that the exercise of jurisdiction will impose on the
defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest
in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in
obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states
in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d
560 (2d Cir. 1996)(internal citations and quotations omitted).

"[T]he Second Circuit has noted that it would be the 'rare' case where personal jurisdiction
was proper under New York's long-arm statute but not under a due process analysis." *Camacho*,
2019 U.S. Dist. LEXIS 209202 at *9 (citing *Eades*, 799 F.3d at 168); *see also Aviles v. S&P Glob.,
Inc.*, 380 F. Supp. 3d 221, 264 (S.D.N.Y. 2019) ("Where, as here, a court takes jurisdiction over a
defendant under New York's long-arm statute on the basis of the defendant's in-state transaction
of business, the requirements of due process are typically satisfied."); *see also HSH Nordbank AG
N.Y. Branch v. Street*, 2012 U.S. Dist. LEXIS 99830, at *14, fn. 3 (S.D.N.Y. July 18, 2012)("[T]he
personal jurisdiction analysis under [N.Y. C.P.L.R.] § 302(a)(1) and the Due Process Clause is in
most instances essentially coterminous … .").

Having found that personal jurisdiction is appropriate under the theory that Defendant
purposefully directed business activity assuming the Website is a purely interactive one (given that
Plaintiff, due to his blindness, was never able transact business with Defendant), then due process
is also satisfied. Courts have found due process consideration satisfied under similar
circumstances. *Buck Constr., LLC v. Murray Corp.*, No. 6:17-CV-275 (FJS/TWD), 2017 U.S.
Dist. LEXIS 145858, at *13 (N.D.N.Y. Sep. 8, 2017)("In this case, it is undeniable that Defendant

runs an interstate business that knowingly ships its products to New York.")  The court concluded, "Although Defendant argues that its New York sales and shipments represent just a tiny fraction of its overall numbers, i.e., 2.78% of total revenue and 2.68% of total shipments, Defendant is clearly aware that its products enter New York and are being used in New York." *Buck Constr.*, No. 6:17-CV-275 (FJS/TWD), 2017 U.S. Dist. LEXIS 145858 at *13.  The same is true here. Although Defendant argues that its New York internet business is a tiny fraction of its annual revenue, Defendant is nevertheless aware that it ships products to New York.  *See* Dkt. # 17-1, ¶ 6.

Moreover, exercising personal jurisdiction does not offend traditional notions of fair play and substantial justice.  "'[M]odern communication and transportation ease' any burden the defense of this case in New York might impose." *Averbach v. Cairo Amman Bank*, No. 19-cv-0004-GHW-KHP, 2020 U.S. Dist. LEXIS 10902, at *27 (S.D.N.Y. Jan. 21, 2020)(citing *Licci IV*, 732 F.3d at 173-74 (quoting *Robertson-Ceco Corp.*, 84 F.3d at 574).  And like *Licci*, where the court found that "the federal and state governments had an 'interest in monitoring banks and banking activity to ensure that its system is not used as an instrument in support of terrorism[,]'" *see* 732 F.3d at 173-74, New York has an interest in enforcing the state laws with regard to the commercial activity that is conducted here.  The fact that it takes place over the internet does not change its interests.

One court put it best when it remarked

It appears appropriate to observe that given today's internet reach and capabilities, IQS is also subject to personal jurisdiction here under § 302(a)(1) because it, by the internet, also transacts business in New York. "It has long been observed that technological advances affecting the nature of commerce require the doctrine of personal jurisdiction to adapt and evolve along with those advances." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp.2d 549, 565 (S.D.N.Y. 2000).  IQS's website, www.industrialquicksearch.com, gives users the option to submit company listings, track product areas, and submit e-mails directly to IQS's sales department. It is true

that the "use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant." *Id.* In this regard, IQS stresses that if personal jurisdiction is appropriate based on its website, it will unfairly be subject to personal jurisdiction in every state. This argument is unavailing, for technological advances enable IQS to transact business in every state via an interactive website, where those in the state can communicate directly via its internet route back to IQS. With that ability, however, comes the responsibility for actionable conduct. IQS's presence in New York, by way of an interactive website, is more closely akin to actual physical presence in New York than it is to running an advertisement in a national magazine. If IQS wishes to operate an interactive website accessible in New York, there is no inequity in subjecting IQS to personal jurisdiction here. If IQS does not want its website to subject it to personal jurisdiction here, it is free to set up a "passive" website that does not enable IQS to transact business in New York. Having decided to create an interactive website that enables it to transact business in New York, IQS is subject to personal jurisdiction here under CPLR § 302(a)(1) because the cause of action for infringement arises directly out of the transaction of business, to wit, the use of an allegedly infringing website.

*See Thomas*, 237 F. Supp. 2d at 491-92.

Many of those arguments the defendant made in that case are echoed here. Defendant claims that it would be unfairly haled in a far-off forum. If that is so, then it should not have utilized the benefits of an interactive website where purchases can be made, and where those very purchases involve discrimination due to the inherently unequal access those New York customers have. By making the Website interactive rather than passive, Defendant was subjecting itself to New York laws, and cannot now be heard to object. Just like *Thomas*, the Website is infringing by dint of its failure to include WCAG 2.1-compliant embedded code, directly impacting Plaintiff's ability to purchase goods and products on the Website, and directly implicating Plaintiff's equal access claims under the ADA and NYCHRL by virtue of the transactions that were consummated by non-disabled customers in New York.

As the *Thomas* court further noted, running a fully interactive website "is more closely akin to actual physical presence in New York than it is to running an advertisement in a national magazine." Moreover, the same technological advances which enable Defendant to spread its

reach far and wide across the nation, including New York, also alleviate it of many of the burdens of litigation conducted across state borders.  Depositions conducted by Zoom, conferences by phone, and email and phone communications routinely allow counsel to exchange information, negotiate settlements, and provide updates on the case.  This is especially true in the wake of COVID where the use of technology has been normalized to some extent.  Finally, New York has an interest in protecting its citizens against discrimination.  For these reasons, an infringing website should not be saved from litigation on personal jurisdiction grounds.

### C.  VENUE IS APPROPRIATE IN THE CURRENT FORUM

Defendant finally argues for a transfer of venue to California, where Defendant is located.

"When considering a motion to transfer venue, the analysis involves two parts."  *Weekes v. Outdoor Gear Exch., Inc.*, 2023 U.S. Dist. LEXIS 36905, at *5 (S.D.N.Y. Mar. 6, 2023)(citing *Megna v. Biocomp Lab'ys Inc.*, 220 F. Supp. 3d. 496, 497 (S.D.N.Y. 2016)).  "First, the court must determine whether the suit could have been filed in the proposed forum."  *Weekes*, 2023 U.S. Dist. LEXIS 36905 at *5 (citing *Megna*, 220 F. Supp. 3d. at 497).  If this is met, the court considers the following factors:

> (1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice.

*Megna*, 220 F. Supp. 3d. at 498.  "Furthermore, one factor is not necessarily dispositive of another and each factor will vary based on the circumstances of the case."  *Weekes*, 2023 U.S. Dist. LEXIS 36905 at *5.

The analysis in *Weekes* is instructive.  Reviewing the first step, the court acknowledged, "it is true that this action could have been brought in the District Court of Vermont. OGE is

registered as a corporation in Vermont and is therefore subjected to personal jurisdiction in that state." *Weekes*, 2023 U.S. Dist. LEXIS 36905 at *18.  However, when examining the nine factors, the court found that a transfer was not warranted.  *See* 2023 U.S. Dist. LEXIS 36905 at *18-20.

First, the court noted, "In moving to transfer venue, defendants must identify potential witnesses who would be inconvenienced if the suit were to remain in the forum chosen by the plaintiff, along with a general statement of the substance of the potential witnesses' testimony." *Weekes*, 2023 U.S. Dist. LEXIS 36905 at *19.  But in that case, the defendant had not identified a witness who would be inconvenienced by maintaining suit in the current forum or what their testimony would be.  2023 U.S. Dist. LEXIS 36905 at *19.  Similarly here, although Defendant has offered the Declaration of Gina Papandrea, the Declaration does not state who would be inconvenienced by maintaining suit in the instant forum, what their testimony would be, let alone whether Ms. Papandrea would be the relevant witness in question.  *See generally* Dkt. # 17-1.

The *Weekes* court went on to note that the remaining factors weighed in favor of maintain suite in New York.  2023 U.S. Dist. LEXIS 36905 at *19-20.  Specifically, the court explained,

> The locus of the facts at issue occurred in this district through the internet and Weekes is a resident of New York. ¶¶ 1-2. Although OGE claims to lack the financial ability to maintain a website that is compliant with the WCAG, the corporation has the ability to pay over 100 associates. Sherman Aff. ¶¶ 3-4. Therefore, the financial means factor weighs in favor of not transferring the venue. The final three factors also weigh in favor of maintaining venue in the Southern District of New York as state law will be applied for the NYCHRL claim. ¶¶ 46-52. Lastly, in the interest of judicial economy, it would be a burden on the District Court of Vermont to interpret New York law for purposes of resolving this action.

*Id.* at *19-20.

Similarly here.  The locus of the facts at issue occurred in the Southern District of New York and Plaintiff is a resident of New York.  Based on the comparison of sales conducted in New York and California, which suggests a volume large enough to surpass New York sales by factors of thousands, *see* Dkt. # 17-1, ⁋ 6, Defendant has the financial wherewithal to conduct litigation

21

on a national stage.  The final three factors weigh in favor of maintaining venue here as New York

state law will be applied for Plaintiff's NYCHRL claim.  Finally, it would burden a California

District Court to interpret New York law to resolve this action.

For the reasons set forth above, venue should be maintained in the Southern District of

New York.

## V.      **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss should be denied in its

entirety.


Dated:  April 21, 2023                                    Respectfully Submitted,

                                                          **STEIN SAKS, PLLC**

                                                          */s/ Kenneth Willard*_____

                                                          Kenneth Willard, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Kenneth Willard*

Kenneth Willard, Esq.
