UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRYAN VELAZQUEZ, *on behalf of himself and all others similarly situated*,

                                        Plaintiff,

                    – *against* –

DON ROBERTO JEWELERS, INC.,

                                        Defendant.

---

**OPINION & ORDER**

22-cv-09247 (ER)

RAMOS, D.J.:

Bryan Velazquez, who is visually impaired and legally blind, filed this putative class action alleging that he has been denied full and equal access to a website owned and operated by Don Roberto Jewelers, Inc.  Don Roberto has moved to dismiss for lack of personal jurisdiction and improper venue.  For the reasons set forth below, the motion is DENIED.

## I.    BACKGROUND

Velazquez, a resident of New York City, is visually impaired and legally blind. Doc. 15 ¶¶ 2, 11.  He uses screen-reading software to navigate the internet.  *Id.* ¶¶ 17, 23.

Don Roberto owns and operates www.donrobertojewelers.com (the "Website"). *Id.* ¶ 21.  The Website offers products and services for online sale and general delivery to the public.  *Id.* ¶ 22.  It also offers interactive features that should allow users to browse for items, inquire about pricing, and choose a price range.  *Id.* ¶¶ 22, 28.

On September 13 and 16, 2022, Velazquez visited the Website to purchase a ring that he intended to give as a gift.  *Id.* ¶¶ 25–27.  While attempting to make his purchase, however, Velazquez encountered multiple issues.  *Id.* ¶ 27.  For one, the "choose a price range function" was not identified as an interactive button, so Velazquez had to look through hundreds of rings rather than narrow the selection down by price point.  *Id.* ¶ 28.

In addition, different images of the same product had "poorly descriptive alternative text," so Velazquez could not choose one specific ring because "they all sounded the same." *Id.* ¶ 29.  The phone number and email address on the home page posed issues as well:  the phone number was in "plain text . . . inaccessible to the screen reader software," while the email address was "non-interactive, therefore making it difficult for [Velazquez] to send an email." *Id.* ¶ 30.  And the Website had several other accessibility problems, including a lack of alternative text for multiple images on the Website, headings and lists that were not properly formatted, and other interactive elements that were not correctly identified. *Id.* ¶ 31.

Velazquez asserts that he intends to return to the Website to complete his purchase in the near future if it is made accessible. *Id.* ¶ 33.  He specifically requests that the Website be made compliant with version 2.1 of the Web Content Accessibility Guidelines. *Id.* ¶¶ 19, 41.  Those guidelines are followed by many businesses and government agencies "to ensure their websites are accessible." *Id.* ¶ 19.

Velazquez brought this action on October 27, 2022.  Doc. 1.  He filed an amended complaint on March 10, 2023.  Doc. 15.  Velazquez alleges that Don Roberto violated the Americans with Disabilities Act and the New York City Human Rights Law. *Id.* ¶¶ 52–72.  He seeks declaratory and injunctive relief, as well as damages. *Id.* at 20–22.

On March 31, 2023, Don Roberto moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and improper venue pursuant to Rule 12(b)(3).  Doc. 16.  Don Roberto submitted a declaration from one of its executives in connection with the motion.  Doc. 17-1.  The declaration states that Don Roberto is not registered to do business in New York. *Id.* ¶ 5.  The "vast majority" of Don Roberto's sales are made at one of its physical locations in California. *Id.* ¶ 6.  In 2021, Don Roberto made one sale through its website to a New York address, accounting for a minuscule percentage of its total sales. *Id.*  In 2022, Don Roberto made two sales to

customers with a New York shipping address, again accounting for just a tiny fraction of its total sales.  *Id.*

II.     **LEGAL STANDARD**

   A.  **Rule 12(b)(2)**

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant."  *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02-cv-4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  To meet this burden where there has been no discovery or evidentiary hearing, the plaintiff must plead facts sufficient to make a prima facie showing of jurisdiction.  *Id.*  As the court evaluates a Rule 12(b)(2) motion, it must credit the plaintiff's allegations as true and resolve all doubts in the plaintiff's favor.  *Casville Invs., Ltd. v. Kates*, No. 12-cv-6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013).  "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'"  *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14-cv-3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).  As Rule 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials outside the pleadings when ruling on such motions.  *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91-cv-3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *accord Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

To assess personal jurisdiction over a non-domiciliary in a federal question case, the court looks to the long-arm statute of the forum state.  *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015).  If the court's exercise of personal jurisdiction is

proper under the long-arm statute, then the court asks whether personal jurisdiction "comports with due process protections established under the Constitution." *Id.*

### B. Rule 12(b)(3)

"The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction." *Casville Invs.*, 2013 WL 3465816, at *3 (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)). "When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper." *Id.* (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). Where the court relies on pleadings and affidavits and does not conduct an evidentiary hearing, the plaintiff need only allege facts sufficient to make a prima facie showing of venue. *Id.* (citing *Gulf Ins.*, 417 F.3d at 355).

## III. DISCUSSION

### A. Personal Jurisdiction

#### 1. New York's Long-Arm Statute

Velazquez contends that the Court has personal jurisdiction based on section 302(a)(1) of the New York long-arm statute. Doc. 19 at 4. Under that provision, a court in New York may exercise personal jurisdiction over a non-domiciliary if (1) the defendant "transacts any business within the state," and (2) the "cause of action aris[es] from" that business transaction. N.Y. C.P.L.R. § 302(a)(1); *see, e.g., Eades*, 799 F.3d at 168.

##### a. Transacting Business in New York

Under the first prong, the defendant "need not be physically present in New York to 'transact business,' so long as the defendant has engaged in 'purposeful activity.'" *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 362 (S.D.N.Y. 2020). That includes, for example, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).

In assessing whether the operation of a website qualifies as the transaction of business in New York, courts analyze the website's "degree of interactivity." *Camacho v. Emerson College*, No. 18-cv-10600 (ER), 2019 WL 5190694, at *3 (S.D.N.Y. Oct. 15, 2019); s*ee also Touro College v. Fondazione Touro Univ. Rome Onlus*, No. 16-cv-3136 (DAB), 2017 WL 4082481, at *8 (S.D.N.Y. Aug. 31, 2017). A defendant's operation of a "passive" website accessible in New York, such as one that merely "provides information about services for sale and contact information for the seller, without any ability to directly purchase the services through the website," does not rise to the required level of transacting business to confer personal jurisdiction. *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 568 (E.D.N.Y. 2011); *see also Touro College*, 2017 WL 4082481, at *9. On the other hand, a defendant's operation of an "interactive" website accessible in New York, such as one that allows for the purchase and exchange of goods, can support the exercise of personal jurisdiction. *See Touro College*, 2017 WL 4082481, at *9.

Don Roberto's website is interactive because it allows for the purchase and exchange of goods. Doc. 15 ¶ 22; *see Quezada*, 2021 WL 5827437, at *7 (finding that defendant's website was interactive because "it allows for the purchase and exchange of goods"). And while a website's capacity to be accessed in New York may not alone constitute a transaction of business, *see Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19-cv-11197 (KPF), 2020 WL 7480619, at *8 (S.D.N.Y. Dec. 18, 2020), personal jurisdiction is more likely to exist if the defendant has actually sold goods in New York, *see Dicks v. Cooks Junction, Inc.*, No. 22-cv-6495 (LJL), 2023 WL 2775830, at *4 (S.D.N.Y. Apr. 4, 2023) (finding first prong satisfied where there was "no dispute that Defendant's Website is interactive and has been used to effect commercial transactions with customers in New York"); *cf. Diaz v. Kroger Co.*, No. 18-cv-7953 (KPF), 2019 WL 2357531, at *7 (S.D.N.Y. June 4, 2019) (dismissing case for lack of personal jurisdiction

where "Defendant does not sell, through the Website, goods or services to New York residents").

Here, the Website has been used to sell goods to customers in New York. Don Roberto's own declaration states that the company made three sales to New York addresses in 2021 and 2022. Doc. 17-1 ¶ 6. While the three New York sales constitute only a fraction of Don Roberto's overall business, *id.*, section 302(a)(1) is a "single act statute," *Spin Master*, 463 F. Supp. 3d at 362. As a result, "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988). And Don Roberto's assertion that it did not expressly advertise to New York residents, Doc. 17-1 ¶ 6, is "not enough to immunize [it] from this state's jurisdiction when [its] products are readily available for sale to New York customers," *Quezada*, 2021 WL 5827437, at *7 (finding that allegations that website offered goods for sale to customers in New York constituted sufficient prima facie evidence that defendant conducted business in New York).

Accordingly, accepting the amended complaint's allegations as true, the Court concludes that the "transacting business" prong of the New York long-arm statute is satisfied.

   b.   *Arising from a Business Transaction*

The second prong of section 302(a)(1) demands "an articulable nexus or substantial relationship between the business transaction and the claim asserted." *Spin Master*, 463 F. Supp. 3d at 364 (internal quotation marks and citation omitted). "This inquiry is relatively permissive and does not require causation, but merely a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 11 (N.Y. 2016) (internal quotation marks and citations

omitted).  In other words, "[t]he claim need only be in some way arguably connected to the transaction."  *Id.* (internal quotation marks and citation omitted).

Don Roberto argues that Velazquez merely went to the Website, "saw an alleged ADA violation and sued," which does not provide an adequate connection between the claim asserted and Don Roberto's activities in New York.  Doc. 17 at 12.  It is true that Velazquez did not complete a transaction, but he attempted to access the Website to make a purchase.  Doc. 15 ¶ 27 (alleging that Velazquez visited the Website twice to purchase a ring but encountered several issues).  That is sufficient under New York law.  *See Sanchez v. NutCo, Inc.*, No. 20-cv-10107 (JPO), 2022 WL 846896, at *4 (S.D.N.Y. Mar. 22, 2022) (finding that case arose from a business transaction because plaintiff alleged that he "attempted to access the Website to make a purchase"); *Quezada*, 2021 WL 5827437, at *7 (similar).

Furthermore, Velazquez alleges that the Website's "access barriers effectively denied [Velazquez] the ability to use and enjoy [the Website] the same way sighted individuals do."  Doc. 15 ¶ 32.  That allegation of discrimination creates the required nexus or substantial relationship between the business transaction and the claim asserted.  *See Dicks*, 2023 WL 2775830, at *5 ("This allegedly discriminatory conduct, transacting with sighted individuals but not with visually impaired individuals, is what forms the basis of Plaintiff's claims against Defendant. . . .  [S]uch allegations create the articulable nexus or substantial relationship between the business transaction and the claim asserted." (internal quotation marks and citation omitted)); *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 16 (S.D.N.Y. 2022) ("Defendant's transactions . . . have a substantial relationship with the claim asserted—that Defendant's website is accessible to sighted customers but inaccessible to visually impaired customers.").

In arguing that the second prong of section 302(a)(1) is not satisfied, Don Roberto primarily relies on *Mercer v. Rampart Hotel Ventures, LLC*, No. 19-cv-3551 (PAE) (GWG), 2020 WL 236843 (S.D.N.Y. Jan. 16, 2020), *report and recommendation*

*adopted*, 2020 WL 882007 (S.D.N.Y. Feb. 24, 2020).  In that case, the plaintiff visited a hotel's website but "was unable to learn about the accessible features of the hotel." *Id.* at *2.  The plaintiff alleged that the defendant had engaged in business transactions by booking hotel reservations with other New York residents. *Id.* at *5.  But the court concluded that those transactions could not satisfy the "arising out of" prong because they "did not cause plaintiff harm and plaintiff's specific claim in this case does not arise out of those transactions." *Id.*

The Court is more persuaded, however, by decisions holding that the second prong of section 302(a)(1) is satisfied by allegations that the plaintiff attempted to access the defendant's website to make a purchase. *See Sanchez*, 2022 WL 846896, at *4; *Quezada*, 2021 WL 5827437, at *7.  As other courts have explained, the fact that a plaintiff's claim "arises from her *inability* to transact with [the defendant] as a result of the alleged discrimination . . . is not a bar to exercising personal jurisdiction." *Campbell v. Gallery Model Homes, Inc.*, No. 22-cv-9947 (AT), 2024 WL 1076541, at *3 (S.D.N.Y. Mar. 12, 2024).  In those circumstances, the plaintiff is "harmed by [the defendant's] transactions with [other] New York customers." *Id.* (second alteration in original) (citation omitted).  Here too, Don Roberto offers products on the Website to New York customers—"but only to those customers who are not legally blind and can navigate the Website," *id.* (citation omitted).  Don Roberto's transactions thus have a substantial relationship to Velazquez's claim. *See id.*; *see also Guglielmo v. JEGS Auto., Inc.*, No. 20-cv-5376 (LJL), 2021 WL 1026168, at *5 (S.D.N.Y. Mar. 17, 2021) ("If, at the time of the filing of this action, Defendant was selling products through its Website to New York customers and at the same time displaying the Website to Plaintiff but denying him the access other New York customers had to purchase products, those facts would help to establish personal jurisdiction and create the articulable nexus or substantial relationship between the business transaction and the claim asserted." (internal quotation marks and citation omitted)).

Therefore, the Court may exercise personal jurisdiction pursuant to section 302(a)(1) of the New York long-arm statute.

2. *Due Process*

The due process test for personal jurisdiction has two parts. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016). First, the "minimum contacts" analysis evaluates whether the defendant has "sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant." *Id.* Second, the "reasonableness" inquiry asks whether the exercise of personal jurisdiction over the defendant "comports with traditional notions of fair play and substantial justice under the circumstances of the particular case." *Id.* (internal quotation marks and citation omitted).

"The requisite 'minimum contacts' analysis 'overlaps significantly' with New York's § 302(a)(1) inquiry into whether a defendant transacted business in the State." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 515 (S.D.N.Y. 2016) (citation omitted). "[T]he Second Circuit has noted that it would be a 'rare' case where personal jurisdiction is proper pursuant to New York's long-arm but not pursuant to a due process analysis." *Romero*, 580 F. Supp. 3d at 16 (quoting *Eades*, 799 F.3d at 168). Here, since the record indicates that Don Roberto has "purposefully availed itself of New York as a forum," the Court also holds that Don Roberto has "the requisite minimum contacts with New York" for purposes of the due process analysis. *See id.* at 17 (reaching similar conclusion).

As for the reasonableness inquiry, the relevant considerations include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* With respect to the first factor, although litigating in New York may impose a burden on Don Roberto because its offices are

located in California, Doc. 17-1 ¶ 4, and courts find that litigating across the country is a significant burden, *Global Edge Design Inc. v. Michel*, No. 20-cv-9654 (PKC), 2021 WL 1549990, at *5 (S.D.N.Y. Apr. 20, 2021), the burden is outweighed by the other factors. *See Quezada*, 2021 WL 5827437, at *7 ("Although litigating in New York may impose a burden on [the defendant], the burden is outweighed by the other factors."). The second and third factors weigh in favor of exercising personal jurisdiction because New York has an interest in the resolution of the dispute, *see id.*, and Velazquez "has an interest in adjudicating his case where he resides," *Romero*, 580 F. Supp. 3d at 17. The final two factors are neutral. In weighing the fourth factor—concerning efficient resolution of the controversy—"courts consider where witnesses and evidence are likely to be located." *Schottenstein v. Schottenstein*, No. 04-cv-5851 (SHS), 2004 WL 2534155, at *10 (S.D.N.Y. Nov. 8, 2004). Documentary evidence and potential witnesses in this case are likely to be located in both California and New York, making this factor neutral. *See id.* With respect to the final factor, the parties have not identified "any substantive social policies that would be furthered by permitting this case to be heard" in either California or New York. *See id.* In sum, the "reasonableness" inquiry favors the exercise of jurisdiction in New York. *See generally Campbell*, 2024 WL 1076541, at *4 ("As other courts in this District adjudicating similar matters have held, the constitutional floor has been met, and the exercise of personal jurisdiction over [the defendant] is reasonable.").

Don Roberto's motion to dismiss for lack of personal jurisdiction is denied.

### B. Venue

The federal venue statute provides that "[a] civil action may be brought in":

> (1) a judicial district in which any defendant resides, if all defend-
> ants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or
> omissions giving rise to the claim occurred, or a substantial part of
> property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought
> as provided in this section, any judicial district in which any

defendant is subject to the court's personal jurisdiction with respect
to such action.

28 U.S.C. § 1391(b).  Because Don Roberto "is not a resident of New York, § 1391(b)(2)

is most relevant here."  *Dicks*, 2023 WL 2775830, at *5.

The Second Circuit has laid out a two-part inquiry to determine whether venue is

appropriate under § 1391(b)(2).  "First, a court should identify the nature of the claims

and the acts or omissions that the plaintiff alleges give rise to those claims.  Second, the

court should determine whether a substantial part of those acts or omissions occurred in

the district where suit was filed . . . ."  *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d

408, 432 (2d Cir. 2005) (internal citation omitted).

Don Roberto asserts that courts must assess where the defendant's acts or

omissions occurred when conducting the venue analysis.  Doc. 17 at 16; *see Daniel*, 428

F.3d at 432 ("[I]n most instances, the purpose of statutorily defined venue is to protect the

*defendant* against the risk that a plaintiff will select an unfair or inconvenient place of

trial." (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979))).  The

Second Circuit has "caution[ed] district courts to take seriously the adjective

'substantial'" and to "construe the venue statute strictly."  *Gulf Ins.*, 417 F.3d at 357.

Don Roberto argues that it has "no particular connection to . . . this District other

than the mere happenstance that [Velazquez] accessed the website from New York," Doc.

17 at 18, and relies on two out-of-circuit opinions to support its claim that venue is

improper, *id.* at 18–20.  However, courts in this District have found venue to be proper

under § 1392(b)(2) where the plaintiff, "who resides in the Southern District of New

York, alleges that she accessed and attempted to utilize, on a number of occasions[,]

Defendant's website from within this Judicial District."  *Dicks*, 2023 WL 2775830 at *6

(internal quotation marks and citation omitted); *see also Young v. Metro. Learning Inst.,

Inc.*, No. 22-cv-1722 (JPO), 2023 WL 1928001, at *2 n.2 (S.D.N.Y. Feb. 10, 2023)

("Plaintiff alleges that he accessed Defendant's website from his computer while located

within the Southern District.  Because the events giving rise to Plaintiff's claim occurred within the Southern District, venue is proper here.").

In this case, Velazquez alleges that he "attempted to utilize, on a number of occasions, the subject Website within this Judicial District."  Doc. 15 ¶ 8.  Velazquez's attempts to access the Website are the acts that give rise to his claim, and a substantial part of those acts occurred in this District, where the suit was filed.  "Put differently, it was in this District that [Velazquez] encountered and suffered the effects of [Don Roberto's] allegedly unlawful discrimination."  *See Dicks*, 2023 WL 2775830, at *6.  The Court thus finds that venue is proper in this District.

## IV.    CONCLUSION

For the foregoing reasons, Don Roberto's motion to dismiss is DENIED.  The parties are directed to appear for a telephonic initial pretrial conference on April 25, 2024, at 10:00 a.m.  The parties should dial 877-411-9748 and enter access code 3029857# when prompted.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 16.

It is SO ORDERED.

Dated:    March 27, 2024
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.